**FILED**

JUL 0 6 2005

CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| DANIEL L. SLOAT, | ) | CIV. 03-5057 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| RAPID CITY AREA SCHOOL DISTRICT | ) | |
| NO. 51-4, | ) | |
| | ) | |
| Defendant. | ) | |

This lawsuit is brought pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. 621 *et. seq*. Complaint at ¶ 1. Therefore, the Court has jurisdiction pursuant to 28 U.S.C. § 1331. Now pending before the Court is a motion for summary judgment filed by Defendant Rapid City Area School District No. 51-4 (the District) and a motion to amend presented by Plaintiff Daniel L. Sloat (Sloat). Briefing is complete and these related motions are ripe for disposition. After considering the briefs, undisputed facts, and the exhibits, the Court is convinced that the District is entitled to summary judgment. The motion to amend shall also be denied.

# I. FACTUAL BACKGROUND

The factual background submitted by the parties is extensive and includes many facts which are not relevant to the resolution of the pending motion.[1]  The Court will set forth only the facts necessary to address the issues disputed by the parties.

## A.    The Machine Tool Program

In 1995 or 1996, William Janklow, then Governor of South Dakota, instructed Western Dakota Technical Institute (WDTI)[2] to implement a machine tool program.  Deposition of Jeff L. Bailie (Bailie Depo.) at 8; Deposition of Kenneth K. Gifford, Ed.D. (Gifford Depo.) at 6, 8-9.  The Governor's Office of Economic Development (G.O.E.D.) provided a substantial amount of funds to establish the program.  Bailie Depo. at 12; Gifford Depo. 9; Daniel L. Sloat Deposition (Sloat Depo.) at 65.

Sloat applied for the newly created position of Industrial Machinist Instructor within the program.  District's Statement of Undisputed Material Facts (DSMF), Exhibit 1.  He was chosen over the only other applicant, Jerry Gossard (Gossard), primarily because of his background, experience, and educational level.  Bailie Depo. at 14, 33; Gifford Depo. at 11.  Sloat was hired by WDTI for 94 days during the Spring 1998 semester.  DSMF, Exhibit 2.  He did not teach, but made all the necessary preparations to develop and implement the new

---

[1]  For instance, the District cites numerous instances in the record which it believes shows that Sloat's job performance was less than exemplary.  DSMF at ¶¶ 34, 41-44.  However, for the purpose of the summary judgment, the District does not dispute that Sloat's performance was satisfactory.  Moreover, the District does not rely upon Sloat's job performance as a reason for the non-renewal of his contract.  Thus, there is no need to expound upon these facts.  Additionally, the District cites facts concerning Sloat's recruiting efforts.  Id. at ¶¶ 23-25, 45, 51-52.  Sloat's recruitment efforts relate only to job performance and similarly need not be addressed in this opinion.

[2]  WDTI is under the administration of the District.  Answer at ¶ k.

program.  Sloat Depo. at 29-31, 34-36, 179.  He was also required to participate in the recruitment of students.  DSMF, Exhibit 7, p. 3.

Sloat assisted in the acquisition of the machines necessary for the program.  Gifford Depo. at 10; Bailie Depo. at 12-13.  The initial equipment purchased included a computer numerical control (C.N.C.) machine at a cost of $60,000, six milling machines at $8,500 each, a surface grinder at $20,000, and measuring equipment at $30,000.  Sloat Depo. at 52, 54-55.  The funds used to purchase the equipment came from the G.O.E.D.  Gifford Depo. at 9-10; Bailie Depo. at 12.

In the Fall of 1998, Sloat began teaching students enrolled in the machine tool program.  Sloat Depo. at 33.  During the first semester of the new program, approximately 18 students received instruction.  Sloat Depo. at 47.  Sloat received $38,520 in compensation for the 1998-1999 school year.  DSMF, Exhibit 3.  He was employed by the District pursuant to a one-year contract.  Id. at ¶¶ 6-9, Exhibits 3, 4, 5.  Sloat's employment on a contract basis was not unusual.  All faculty at WDTI are hired pursuant to one-year contracts and no position is tenured.  Gifford Depo. at 20.

Initially, the machine tool curriculum was only a one-year program.  DSMF at ¶ 18.  During the Spring semester of 1999, however, WDTI received additional funds and Sloat was asked to implement a second-year program.  Sloat Depo. at 48-50.  Classes for the second-year program began in the Fall of 1999.  Id. at 50.  The expansion of the program required the purchase of additional machines.  The equipment purchased by WDTI included a C.N.C. lathe at a cost of $60,000, a wire E.D.M. machine at $90,000, four smaller C.N.C. machines at $30,000 each, four smaller milling machines at $20,000 each, and a coordinate measurement

machine at approximately $20,000. Id. at 64. Again, the funds came from the G.O.E.D. Id. at 64-65.

With the addition of the second-year program, the decision was made to employ another teacher. See Gifford Depo. at 15. Sloat participated in the hiring process. Sloat Depo. at 201. Gossard accepted employment as a instructor for the first-year classes. Gossard Deposition (Gossard Depo.) at 5. He received an initial salary of $27,000. Id. at 31. Pursuant to an agreement between the instructors and upon the approval of administration, Sloat taught two first-year classes and Gossard taught two second-year classes. Sloat Depo. at 90, 202.

The machine tool program was expensive to operate. Bailie Depo. at 11-12; Nancy Richter Deposition (Richter Depo.) at 25. The costs included salaries, maintenance on the machines, electricity, and supplies. Sloat Depo. at 70-71. Some of the costs, such as those associated with the electricity needed to operate the machines, were extreme. Bailie Depo. at 31. However, the cost was not unusual for an industrial program at WDTI. Id. at 52.

The longevity of a program at WDTI is based upon student's tuition and fees and a state funding reimbursement formula which considers factors such as the number of students enrolled and exiting the program and whether they were making a targeted wage. Id. at 26. Post-secondary technical schools in South Dakota need 15 students in a program in order to receive state aid for the specific program. Gifford Depo. at 15-16. If the number falls below 15, the schools are normally placed on probation and provided an opportunity to increase the students. Id. When enrollment does not justify the continuance of a program, it is at risk for elimination. Richter Depo. at 7. With respect to the machine tool program, however, the rules were not initially followed when the program was created because it was implemented at the request of the Governor. Bailie Depo. at 18.

4

Enrollment in the second-year machine tool program included nine students in the Fall of 1999 and eight students in the Spring of 2000. DSMF, Exhibit 9. In February 2000, Dr. Gifford notified Sloat by email that only one student was enrolled in the second-year program for the Fall of 2000, and that staffing would be affected if additional new students were not brought into the program. Id. at 104; DSMF, Exhibit 6. Sloat was aware that his job depended on increasing the number of students in the program. Sloat Depo. at 108. On March 2, 2000, Bailie expressed his concern of having only one confirmed student in the program. DSMF, Exhibit 7. Several weeks later, Dr. Gifford sent a memorandum reminding Sloat of the 15 student requirement. Id. at Exhibit 8. The letter informed Sloat that the program, beginning with the 2000-2001 school year, would be held accountable to meet the established measure. Id. The letter also notified Sloat of the possibility of cancelling program options and/or reducing staffing if there was not an increase in the number of confirmed new students. Id. Bailie testified, however, that it was not unusual for a program to have a low number of confirmed students six months before the start of classes. Bailie Depo. at 55. Twelve students participated in the second-year program during Fall 2000 and 11 students returned for the Spring 2001 semester. DSMF, Exhibit 9.

At some point in 2001, Sloat was informed that WDTI would like to have 15 students in the second-year program.[3] Sloat Depo. at 71-72. Sloat acknowledges that the number of students was fairly important but he did not believe the amount was mandated because the purpose of the program was for economic development. Id. at 72-73. Only four students participated in the second-year program during the 2001-2002 school year. DSMF, Exhibit 9.

---

[3] Sloat believed he was informed by Bailie. Sloat Depo. at 72. Bailie testified, however, that his employment at WDTI ended in April 2000. Bailie Depo. at 4.

During the same year, 12 students completed the first-year of the program. Id. Although the

enrollment was low, the program was never placed on probation.[4] Richter Depo. at 34. Bailie

considered the program viable even though the number of students did not reach the target

amount of 15. Bailie Depo. at 18-19. He also testified that other programs were allowed to

continue even though the number of students never reached the target amount. Id. at 39.

On June 19, 2002, Sloat was advised by Richter and Peggy Schmidt that the position of

Machine Tool Technology II Instructor would not be continued at WDTI. Richter Depo. at 17.

The school had recently experienced a $230,000 deficit and other programs were also cut in an

effort to address the financial problems. See id. at 24-25. Five students were enrolled in the

second-year program when Sloat was notified that his contract would not be renewed. DSMF

at ¶ 58, Exhibit 9. Sloat was provided a letter which cited budget constraints and lack of

adequate enrollment as explanation for the decision. Id. at Exhibit 10. The letter indicated that

no contract would be issued for the 2002-2003 school year and constituted notification of the

termination of Sloat's employment. Id. After Sloat's contract was not renewed, Gossard and

another individual provided instruction to the five students enrolled in the second-year

program without additional compensation so the students could complete their two-year

degree. Richter Depo. at 20.

In January 2003, Gossard was informed by Richter that the first-year students would

not have the opportunity to complete the second-year of the program. Gossard Deposition

(Gossard Depo.) at 9-10. Gossard and Roger Olson (Olson), an individual hired as a lab

---

[4] If the number of students fell below 15, the state would usually put the schools on
probation and provide an opportunity to increase the enrollment. Gifford Depo. at 16. If the
numbers did not increase, funding for the program could be eliminated. Id.

teacher, were similarly informed by Dr. Richard Gross Ph.D.[5] (Dr. Gross) in February 2003

that there would be no two-year program in the Fall of 2003.  Olson Deposition (Olson Depo.)

at 7-9.  In May 2003, Gossard was informed that there would be no first-year machine tool

program unless the class consisted of 12 students.  Gossard Depo. at 13.  At one meeting,

Gossard asked Dr. Gross why the school was cancelling the second-year program when six

more students would have returned to WDTI.  Id. at 17.  Dr. Gross indicated to Gossard that

WDTI would not start the second-year program again because legally they would have to

rehire Sloat.  Id.  Olson similarly recalled Dr. Gross agreeing that Sloat was the reason for the

elimination of the second-year program.  See Olson Depo. at 14.  Bailie also testified that

Richter had Sloat "in her targets about nine-tenths of the time."  Bailie Depo. at 60.  The entire

machine tool program was eliminated after the Spring 2003 semester.  Richter Depo. at 21.

**B.      The Borklund Study**

        WDTI conducted a study of the salaries at the institution.  Richter Depo. at 11.  The

study compared the salaries of WDTI's employees to the salaries provided by other similar

institutions.  Id. at 10-11.  In 2001, the findings of the study resulted in the freeze of the

salaries of certain employees.  Id. at 28; Complaint at ¶ 12.  Sloat was one of the individuals

whose salary was frozen.  Complaint at ¶ 13; Richter Depo. at 28-29.  He testified that all of

the employees with frozen wages were "old."  Sloat Depo. at 169.  Richter testified that the

salary freeze occurred because particular salaries were higher than the standard determined to

be appropriate for those positions.  Richter Depo. at 24.  Sloat alleges that the salary freeze of

older employees was an attempt to get those individuals to voluntarily quit employment.

_____

        [5] Dr. Gross replaced Richter, the interim director, as the director at WDTI.  See Olson
Depo. at 5-6.

Complaint at ¶ 13; Sloat Depo. at 117.  In deposition testimony in a separate case, however, Sloat recognized that the wage freeze occurred because the District was attempting to standardize wages and that his salary was frozen because he was in a higher income bracket. Sloat Depo. at 24-25, O'Brien v. Rapid City School District 51-4, Civ. No. 02-907, Seventh Judicial Circuit, Pennington County, South Dakota.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if the movant can "show that there is no genuine issue as to any material fact and that (the movant) is entitled to judgment as a matter of law."  In determining whether summary judgment should issue, the facts and inferences from those facts are viewed in the light most favorable to the nonmoving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, the Court views the evidence presented based upon which party has the burden of proof under the underlying substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2005, 91 L.Ed.2d 202 (1986).

The Supreme Court has instructed that "summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action'"

Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The

nonmoving party "must do more than show that there is some metaphysical doubt as to the

material facts," and "[w]here the record as a whole could not lead a rational trier of fact to find

for the nonmoving party, there is no genuine issue for trial." Matsushita, 475 U.S. at 486.

The Eighth Circuit Court of Appeals 'has repeatedly cautioned that summary judgment

should seldom be granted in the context of employment actions, as such actions are inherently

fact based." Keathley v. Ameritech Corp., 187 F.3d 915, 919 (8th Cir. 1999).  Since

discrimination cases "often depend on inferences rather than on direct evidence[,]" summary

judgment should be granted cautiously.  EEOC v. Liberal R-II School Dist., 314 F.3d 920, 922

(8th Cir. 2002).  Summary judgment is proper, however, if "'the evidence could not support any

reasonable inference' of discrimination." Keathley, 145 F.3d at 919 (quoting Breeding v.

Aurthur J. Gallagher & Co., 164 F.3d 1151, 1156 (8th Cir. 1999)).

### III. DISCUSSION

Under the ADEA, it is unlawful for an employer to discharge or discriminate against an

employee on the basis of age if the person is at or above the protected age of 40 years.  29

U.S.C. §§ 623(a)(1), 631(a).  This District believes the Court must analyze Sloat's claim under

the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct.

1817, 36 L.Ed.2d 668 (1973).  This type of analysis is performed when an age discrimination

claim is based on circumstantial evidence.  Rothmeier v. Investment Advisers, Inc., 85 F.3d

1328, 1332 (8th Cir. 1996).  Sloat, however, believes there is direct evidence of age

discrimination.

In employment actions, direct evidence of discrimination can include actions or

remarks on behalf of the employer which reflect a discriminatory attitude.  Liberal R-II, 314

F.3d at 923.  Additionally, comments "which demonstrate a 'discriminatory animus in the decisional process' ... or those uttered by individuals closely involved in employment decisions may constitute direct evidence" of discrimination.  Id. (quoting Beshears v. Asbill, 930 F.2d 1348, 1354 (8th Cir. 1991)).  In this action, Sloat appears to argue that direct discrimination occurred because the reasons provided for not renewing his contract were false and the elimination of the entire program occurred to avoid rehiring him after he filed this action.  Viewing the evidence in a light most favorable to Sloat, the Court finds no indication of discriminatory conduct specifically related to age.  There is no evidence of any action, comment, or remark with any reference to Sloat's age or age in general.  The arguments raised by Sloat are supported entirely with circumstantial evidence and the Court will perform the burden-shifting analysis.

**A.    Disparate Treatment**

**1.    Sloat's Prima Facie Case**

Under the burden-shifting framework, Sloat must initially establish a *prima facie* case of age discrimination.  Hitt v. Harsco Corp., 356 F.3d 920, 924 (8th Cir. 2004).[6]  Ordinarily, Sloat is required to show that: (1) he is a member of a protected age group; (2) he was performing his job at a level that met his employer's legitimate expectations; (3) he was discharged; and (4) he was replaced by a younger worker."  Id.  For the purpose of summary judgment, there is no dispute that Sloat can satisfy the first two elements of the *prima facie* case.  The District agrees that Sloat is a member of the protected age group and was

---

[6] It is important to recognize that the "McDonnell Douglas framework only shifts the burden of production; the burden of persuasion rests at all times with the plaintiff."  Dammen v. UniMed Medical Center, 236 F.3d 978, 980 (8th Cir. 2001).

10

performing his job at a level that met the legitimate expectations of WDTI. The District

argues, however, that Sloat cannot establish the final two elements of the *prima facie* case.

The Court disagrees. "The burden of establishing a *prima facie* case of disparate-treatment is

not onerous." Gaworski v. ITT Commercial Finance Corp., 17 F.3d 1104, 1109 (8th Cir. 1994).

Sufficient evidence exists to allow Sloat to meet his burden.

The District contends that Sloat was not discharged from his employment from WDTI.

The issue, essentially, is whether an individual employed on the basis of a one-year contract is

discharged if the contract is not renewed. The District cites no case law in support of its

position. The only case cited by Sloat, Equal Employment Opportunity Commission v. White

River School Dist., District of South Dakota, Central Division, No. 02-3019, provides no

meaningful insight. In denying summary judgment in White River, Judge Charles B.

Kornmann found the plaintiff had presented direct evidence of age discrimination and never

reached the burden-shifting analysis. Id. at 13.

The District does cite SDCL § 13-39-65 for the proposition that Sloat had no

continuing contract right. The District also argues that Sloat admits he was neither terminated

nor fired. However, the statute cited by the District, in addition to stating that continuing

contract provisions did not apply to employees of postsecondary technical institute employees,

requires written notification "sixty days prior to the *termination*" of the "*termination*." SDCL §

13-39-65 (emphasis added). In compliance with the statute, WDTI provided a letter notifying

Sloat of the termination of his employment. This letter, stating the intention not to renew

Sloat's contract, was tantamount to a discharge. In referring to the third prong of the burden-

shifting test other cases often use the phrase "adverse employment action." Trammel v.

Simmons First Bank of Searcy, 345 F.3d 611, 614 (8th Cir. 2003); Stidham v. Minnesota Min.

and Mfg., Inc., 399 F.3d 935, 938 (8th Cir. 2005).  There is little question that the non-renewal

of Sloat's contract adversely affected his employment with WDTI.  Viewing the evidence in a

light most favorable to Sloat, the Court finds he has established the third prong of the *prima*

*facie* case.

      With respect to the fourth element, the District argues that Sloat has failed to present

evidence identifying Gossard's age.  As the Court has previously determined, however, the

District essentially admitted that Gossard is a "younger worker" in its Answer.  See Order

Denying Motion to Strike, doc. #118, June 21, 2005.  Accordingly, this argument is without

merit.

      The District also argues that Sloat was not "replaced" by a younger worker.  Again, the

District cites no authority and the cases provided by the Defendant provide no meaningful

guidance.  Regardless, the Court is confident the evidence supports a determination that Sloat

was replaced by a younger worker.  In a light most favorable to Sloat, the evidence indicates

that WDTI employed him as the second-year machine tool instructor; terminated his

employment with notification of the elimination of the second-year program; and continued the

second-year program with a different instructor for one additional year.  The District argues the

decision to allow Gossard to teach the second-year students was reasonable because Gossard

took no additional pay.  The reasonableness of the District's decision, however, does not

change the fact that WDTI filled Sloat's position with a different instructor.  In fact, Gossard's

testimony indicates he may not have received final notification of the elimination of the second

year program until January 2003, months after the program was supposedly terminated.  There

is also some indication that the first-year students in 2003 may not have been aware of the

termination of the second-year program until the Spring semester.[7]  Considering the facts and

circumstances surrounding this case, the Court is satisfied that Sloat was replaced by Gossard.

Accordingly, Sloat has met his burden of establishing a *prima facie* case of age discrimination.

**2.      The District's Nondiscriminatory Reasons**

Without an explanation from the employer, the *prima facie* case "'creates a

presumption that the employer unlawfully discriminated against the employee.'"  Rothmeier,

85 F.3d at 1332 (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254

n.6, 101 S.C. 1089, 67 L.Ed.2d 207 (1981)).  The burden thus shifts to the District, "who must

articulate some legitimate, nondiscriminatory reason for the adverse employment action."  Id.

(citing Burdine, 450 U.S. at 253).  At this stage of the analysis, the burden upon the District is

one of production, not proof.  Krenik v. County of Le Sueur, 47 F.3d 953, 958 (8th Cir. 1995).

"The defendant need not persuade the court, it must simply provide evidence sufficient to

sustain a judgment in its favor."  Id.  The District has produced evidence indicating that the

elimination of the second-year machine tool program, and consequently Sloat's job, resulted

from a combination of budget constraints and the lack of adequate student enrollment.  This

evidence is sufficient to satisfy the District's burden of production.

**3.      Sloat's Evidence of Pretext and Age Discrimination**

With the District's satisfactory production of evidence, the presumption created by

Sloat's establishment of the *prima facie* case is rebutted and no longer applies to the case.

Rothmeier, 85 F.3d at 1332.  Accordingly, under the next sequential step in the McDonnell

---

[7] Olson testified that the February 2003 meeting with Dr. Gross was requested after students were informed by WDTI that no second-year program would be offered.  See Olson Depo. at 6-7.

Douglas framework, Sloat is required to "'prove by a preponderance of the evidence that the
legitimate reasons offered by the defendant were not its true reasons, but were a pretext for
discrimination.'" Hitt, 356 F.3d at 924 (quoting Reeves v. Sanderson Plumbing Prod., Inc., 530
U.S. 133, 143 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

   In his effort to establish pretext, Sloat focuses upon the veracity of the reasons provided
by the District with respect to the decision not to renew his contract.[8] He cites Reeves, in
which the Supreme Court determined that "a plaintiff's *prima facie* case, combined with
sufficient evidence to find that the employer's asserted justification is false, may permit the
trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148.
Sloat argues that his *prima facie* case, and strong showing that the District's justifications for
eliminating the program were false, are sufficient to create an inference of intentional
discrimination.

   Initially, the Court must note that a plaintiff cannot always survive summary judgment
in an age discrimination case merely by relying upon the *prima facie* case and production of
evidence showing pretext.  See Rothmeier, 85 F.3d at 1133 (disagreeing with argument that
*prima facie* case and presentation of evidence of pretext is always sufficient to withstand
summary judgment motion).  A court may decide the evidence is insufficient for a reasonable
jury to infer discrimination even though the plaintiff creates a factual dispute with respect to

---

   [8] Sloat devotes a significant portion of his brief attempting to refute the District's
reference to his competency.  The District's brief in support of summary judgment does briefly
allude to low enrollment as being attributable to Sloat's failure to meet job requirements.  The
brief also discusses, in detail, Sloat's job performance.  However, the only articulated reasons in
the record for the elimination of the second-year machine tool program and Sloat's position are
low enrollment and budget constraints.  As the Court previously stated, Sloat's job performance
and competency simply are not relevant to the resolution of this motion.

the issue of pretext. Id. at 1335.   The proper rule is as follows: Sloat can avoid summary judgment "only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision." Id. at 1336-1337.

The District's stated reasons for terminating the second-year program and not renewing Sloat's contract included low enrollment and budget constraints.  Sloat argues these reasons could not be true because the program continued for one additional year; the purpose of the program was economic development; and the program was viable even with low enrollment. Sloat believes he has a strong *prima facie* case and strong evidence that the reasons provided by the District for the adverse employment action were pretextual.

There is no dispute that the original purpose of the program was economic development.  Accordingly, low enrollment as a stated reason for the elimination of the second-year program facially appears suspicious.  Additionally, the lack of a probationary period imposed by the State, WDTI's allowance of other programs to continue without the target number of 15 students, and the continuance of the program after Sloat's dismissal, similarly raises questions concerning the use of enrollment as a reason cited for the elimination of the program.  The District's second reason, budget constraints, is also somewhat suspect. The equipment was purchased with funds from the G.O.E.D. and created no financial hardship for the District.  Moreover, the expenses, such as supplies and electricity, were not unusual for an industrial program.  Sloat has also produced the testimony of Gossard and Olson concerning statements made by Dr. Gross.  The comments are troubling and do call into question the District's identified reasons for not renewing Sloat's contract.  Accordingly, viewed in a light most favorable to Sloat, the evidence creates a factual issue as to whether the District's

15

proffered reasons for his discharge were pretextual. The first element of the aforementioned test is satisfied.

The second element of the test, whether the evidence creates a reasonable inference of age discrimination, is where Sloat's case finally fails. There is simply no evidence by which one could reasonably infer that age was a determinative factor in the District's employment decision. Sloat argues that the wage freeze was an effort to force older employees to voluntarily retire. The record, however, is devoid of evidence in support of this allegation. Although a wage freeze did occur, Sloat failed to identify each of the affected instructors. Absent his own personal information and salary, Sloat has produced no statistical information concerning the age or wage of any affected instructor. "Evidence, not contentions, avoids summary judgment." Haas v. Kelly Services, Inc., 409 F.3d 1030, 1036 (8th Cir. 2005).

The lack of evidence is not necessarily fatal to his lawsuit. The second part of the summary judgment test "sometimes may be satisfied without additional evidence where the overall strength of the *prima facie* case and the evidence of pretext 'suffices to show intentional discrimination.'" Rothmeier, 85 F.3d at 1337. In this matter, however, Sloat's *prima facie* is not particularly strong and the evidence of pretext, albeit present, is equally unconvincing.

Although the Court is convinced Sloat satisfied his burden of establishing a *prima facie* case, the finding that he was replaced by Gossard is questionable. With no additional compensation, Gossard was allowed to help five students complete the second-year course and fulfill the requirements for the degree they had enrolled to receive. After the five students graduated, however, the second-year program was eliminated just as the District had initially planned. The situation would be different if the District had continued the program in the Fall

16

of 2003, hired a new second-year instructor after dismissing Sloat, or even increased Gossard's compensation.  None of these events occurred, and a reasonable inference of age discrimination cannot be drawn from Sloat's *prima facie* case.

Sloat's evidence of pretext is equally unconvincing.  Regardless of the original purpose of the program, Sloat was instructed, after several years of teaching, that the program needed to meet the minimum student requirements.  He was also repeatedly informed of the potential consequences associated with the low enrollment in the program and there is no evidence that a probationary period was required before WDTI eliminated a program.  The evidence clearly suggests legitimate reason for elimination of the program.  Moreover, testimonial evidence indicates that WDTI suffered a deficit prior to the elimination of the second-year program and that the action it took, closing an expensive program with low enrollment, was in response to its financial troubles.  The action can fairly be described as a business decision, which the Court is not in a position to secondguess. Haas, 409 F.3d at 1036.  Finally, the comments attributed to Dr. Gross and Bailee tend only to prove that animosity existed between Sloat and administrative officials such as Richter, the interim director partially responsible for eliminating the program.  The evidence does not relate the tension to Sloat's age or to age-based discrimination.  See id.   The evidence simply does not create a reasonable inference of age discrimination.

**B.     Disparate Impact**

On April 7, 2005, Sloat sought leave to amend his Complaint.[9]  Although the request presented in the motion is not entirely clear, he also appears to seek additional time to provide

---

[9] In resolving this issue, the Court has considered all the arguments raised by the parties in the motion to amend and the motion for summary judgment.

the identity and reports of retained experts.  The District opposes the motion to amend.  In the event that the Court is inclined to allow leave to amend, or if the Complaint itself states a cause of action for disparate impact, the District also argues it is entitled to summary judgment.

Sloat submits the motion to amend under the authority of Fed. R. Civ. P. 15(a).  The rule states that leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  "As explained by the Supreme Court, absent a good reason for denial – such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of amendment – leave to amend should be granted."  See Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989).  The District asserts that the Court must consider the "good cause" requirement of Fed. R. Civ. P. 16(b) because this motion was filed long after the deadline in this case to amend pleadings.  The Court agrees with the District.  Consideration of Rule 15(a), without regard to Rule 16(b), would read the "good cause" requirement out of the Federal Rules of Civil Procedure.  In re Milk Products Antitrust Litigation, 195 F.3d 430, 437-438 (8th Cir. 1999).

The court-ordered deadline for the parties to amend their pleadings was November 3, 2003.  Sloat now seeks to add a disparate-impact claim approximately 17 months after the deadline expired and after the completion of all discovery except the depositions of damage experts.  He argues that his proposed amendment makes no change in factual allegations and only clarifies his initial pleading.  He fails, however, to explain why he did not assert a disparate-treatment claim in his initial pleading.  Sloat contends that the motion to amend is necessitated by the result in the recent case of Smith v. City of Jackson, Mississippi, 544 U.S. - ---, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005).  Sloat reads Smith as holding that the disparate-impact theory is now cognizable under the ADEA.  The Eighth Circuit, however, recognized

18

disparate-treatment claims under the ADEA prior to Smith and prior to the occurrence of the facts underlying this case. See EEOC v. McDonnell Douglas Corp., 191 F.3d 948, 950-952 (8th Cir. 1999) (recognizing that disparate-impact claims are cognizable under the ADEA). Therefore, a disparate-treatment claim was available to Sloat when he initiated this action and the result in Smith does not support an argument in favor of allowing an amendment in this case. With no sufficient explanation concerning the delay, Sloat has failed to show good cause for an amendment at this late stage of the case.

Although an amendment is not warranted, the Court must consider whether Sloat raised a disparate-impact claim in his initial pleading. Sloat did assert that the wage freeze "adversely affected nine older instructors, including the Plaintiff, with the effect that four of the nine instructors either retired early, quit, or were released from the employment." Complaint at ¶ 13. This type of allegation is generally associated with a claim of disparate impact. See Smith, 125 S.Ct. at 1539 (identifying an assertion of adverse affect as a disparate-impact claim). However, a fair reading of the entire pleading, and particularly the section entitled "Statement of the Claim,"[10] tends to indicate Sloat was only asserting a claim of deliberate discrimination. Even under the liberal pleading standards, there is a serious question as to whether Sloat's pleading gave the District fair notice of a disparate-impact claim. See Northern States Power Co. v. Federal Transit Admin., 358 F.3d 1050, 2056-57 (8th Cir. 2004) (function of notice pleading is to give other party fair notice of nature and grounds for claim).

---

[10] In the "Statement of the Claim" Sloat "asserts that he is a member of a protected class, that he was dismissed from his employment for reasons that are in violation of the ADEA, that he was replaced by a person who is not a member of the protected class, and that the Defendants' decision was pretextual and motivated by age-based animus." Complaint at 1-2. This statement is obviously an assertion of facts necessary to establish a claim of deliberate discrimination.

Regardless, even if Sloat's Complaint could be construed as asserting a disparate-impact claim he cannot survive the District's motion for summary judgment.

To establish a *prima facie* case of disparate impact, Sloat must identify a specific employment practice and present statistical evidence to show that the practice caused him to suffer an adverse employment action because of his membership in a protected group.  Evers v. Alliant Techsystems, Inc., 241 F.3d 948, 953 (8th Cir. 2001).  "[I]t is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact."  Smith, 125 S.Ct. at 1545.  In this matter, Sloat was aware of the reasoning for the wage freeze and knew his salary was frozen because he was in a higher income bracket.  He does identify "a specific test, requirement, or practice within the pay plan that has an adverse impact on older workers."  Id.  Additionally, Sloat presents no statistical evidence to support his claim.  Sloat cannot establish a *prima facie* case of disparate impact and, if his pleading is construed to include such a claim, he cannot survive summary judgment.

## IV.  CONCLUSION

Sloat testified his only evidence of age discrimination is the fact that he was replaced by a younger person.  Sloat Depo. at 96-97.  No rational juror could conclude that the District's conduct constituted deliberate discrimination. Sloat cannot amend his Complaint nor can he establish a prima facie case of disparate impact under his initial pleading.  Sloat cannot survive the District's motion for summary judgment.  Accordingly, it is hereby

ORDERED the District's motion for summary judgment [doc. #98] is granted.

IT IS FURTHER ORDERED Sloat's motion to amend [doc. #97] is denied.

IT IS FURTHER ORDERED Sloat's request for additional time to provide the identity and reports of retained experts is denied as moot.

Dated this 6th day of July, 2005.

BY THE COURT:

ANDREW W. BOGUE
SENIOR DISTRICT JUDGE

21